Dickman, J.
There was no error in making the bank a party defendant to this action in the court below. The bank claimed an interest in the controversy adverse to the plaintiffs. The question involved was the right of the plaintiffs to the possession of the property replevied, and the bank claiming to be the pledgee of the warehouse receipt and the property it represented as collateral security for the payment of Lester’s note, became a necessary party to a' complete determination of the question involved. (Code Sec. 35.)
It is contended by the defendants in error, that under the 7th clause of section 5136, Revised Statutes, U. S., a national bank has no power to loan money upon a note secured by the pledge of a warehouse receipt for merchandise, as collateral security. By the said section, every national banking association is authorized, “to exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title.”
A warehouse receipt, like a bill of lading, is a symbol of *181 the property designated in it, and stands in the place of the pi-operty it represents. The question therefore arises, whether the bank transcended its power in taking the warehouse receipt as collateral security for the note of Lester. The section of the statute under consideration, contains several distinct and independent grants of power— neither grant being a limitation on any other — and describes the kind of banking in which national banking associations are authorized to engage. To render these grants effective, such associations are authorized to exercise such incidental powers as shall be necessary to carry on the kind of banking permitted. A national bank, therefore, empowered to carry on the business of banking “ by loaning money on personal security,” may also exercise all powers incidental thereto. Vested with such authority, we do not think, that in making a loan on the personal obligation of the borrower with a warehouse receipt as collateral security thereto, the bank exceeds its statutory powers. It is not to be limited, in taking security for discounts and loans, to the personal undertaking of the borrower, or to the security afforded by the names of indorsers or personal sureties, but may take a pledge of bonds, dioses in action, stock of a corporation, bills of lading, and other personal chattels. The language “ personal security ” would seem to refer to other personal security than is mentioned in the first grant of power in section 5136 — authorizing the business of banking “by discounting and negotiating promissory notes, etc.” Dillon, J., in Pittsburgh Car Works v. State National Bank of Keokuk, (Thompson’s National Bank Cases, 315,) says, “ The words ‘loans on personal security ’ in the banking act are used in contra-distinction to real estate security;” and in that case it was held, that a national bank might take personal chattels— e. g. a locomotive, as security for discounts and loans. And while section 5136, if not in terms clearly by implication prohibits a loan on real estate, yet, the supreme court of the United States in National Bank v. Matthews, (8 Otto, 621,)—not narrowing the application of the words “ per *182 sonal security ” — held, that where • a national bank loaned money, and as collateral security took the assignment of a note secured by a mortgage of lands with a power of sale thereto annexed, the bank was entitled, upon non-payment of the loan at maturity, to enforce the collection of the note by a sale of the lands.
Without commenting upon the numerous authorities which have been brought to our notice, we are of the opinion, that the court below did not err in refusing to charge the juiy, that a national bank could not lawfully take personal property as security for a loan of money; and in taking the warehouse receipt from Lester, as collateral security for the loan made to him, the bank did not transcend its powers.
We find no error in the refusal of the court below to charge the jury as requested, nor in the charge as given, in reference to the care used in making the loan to Lester, and the measure of inquiry as to the ownership of the flour that was required of the bank, before making the loan. Furthermore, we find no error, either in the refusal of the court to give in chai’ge to the jury the last request of the plaintiff contained in the bill of exceptions, or in the charge thereupon given, “that if the bank in good faith loaned Lester the money and took the flour, believing in good faith it was Lester’s, the transaction was valid.”
By the general rule of the common law, an agent or factor, intrusted with the goods of his principal to sell, could not pledge the same so as to authorize the pledgee to hold them for advances made thereon to the factor or agent. (Patterson v. Tash, 2 Strange, 1178; Daubigny v. Duval, 5 T. R., 604.) But, in modification of the common law rule in this respect, statutes have been passed in England and in this country, protecting the rights of the pledgee to the extent of the advances he had made upon the faith of the pledge, and in the belief that the factor was the owner of the goods. By the act of March 12, 1844, sections 3 and 4 (1 S. & C., 421), in force at the commencement of this action, and the same as sections 3216 and 3217 of the Revised Statutes, it was provided:
*183 Section III. “Every factor or agent, intrusted with the possession of any bill of lading, custom-house permit, or warehouse keeper’s .receipt for the delivery of any such merchandise, and every such factor or agent, not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise for the purpose of sale, or as a.security for an}*- advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with an}r person for the sale or disposition of the rvhole or any part of such merchandise, for any money advanced, or negotiable instrument, or other obligation in writing, given by such other person upon the faith thereof.”
Section IV. “Every person who shall hereafter accept any such merchandise in deposit from any such agent, as security for any antecedent debt or demand, shall not acquire. thereby, or enforce any right, or interest in or to such merchandise or document, other than was possessed or might have been enforced by such agent, at the time of such deposit.”
These provisions of the statute are not to be construed as furnishing protection to those who deal with factors or agents out of the ordinary course of business, with knowledge of their true character, and knowing that their power is restricted by the owner, in reference to the merchandise intrusted to them.' While modifying the general rule of the common law, these enactments rest upon the preservation of good faith and honest dealing, on the part of persons contracting with factors for a pledge of the property held, by them in a fiduciary capacity. Applying these statutory-provisions to the facts in this case, we are led to the conclusion, that where a factor holding a warehouse receipt for the delivery of merchandise consigned to him by the owner to sell on commission, obtains a loan at a bank on his promissory note, and as collateral security therefor (and not to secure any antecedent debt or demand) duly transfers to the bank the warehouse receipt, and makes an agreement with the bank for the disposition of the merchandise, if the *184 bank in good faitb loans the money, and takes the warehouse receipt, and makes such agreement upon the faith that the factor is the true owner of the merchandise, such transfer and agreement will be valid, and the bank will be entitled to hold 'the merchandise as security for the paj’ment of the note.
It is not necessary here to consider what would be the fights of the First National Bank, or how far they would be affected, had it made the loan to Lester solely on the faith of the property pledged. It is evident from the record, that Lester’s note was taken and the money loaned to him not-only on the faith of the thing pledged, but on the faith of liia title to the property. The merchandise was accepted bj’ the bank, not as security for am’ antecedent debt or demand, but for a new and simultaneous loan or advance of money. We are therefore of the opinion, that the bank was entitled to hold the flour represented by the warehouse receipt as security for .the payment of Lester’s note, and that the judgment of the district court must be reversed and that of the court of common pleas affirmed.

Judgment accordingly.